# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

**JOSHUA STRICKLIN,**
**ADC #138119**                                                                                      **PLAINTIFF**

**V.**                         **CASE NO. 5:18-CV-224-BSM-BD**

**KENNETH STARK,** *et al*.                                                                **DEFENDANTS**

## RECOMMENDED DISPOSITION

### I.   Procedures for Filing Objections

This Recommended Disposition (Recommendation) has been sent to Chief Judge Brian S. Miller. Any party to this suit may file written objections with the Clerk of Court. To be considered, objections must be filed within 14 days. Objections should be specific and should include the factual or legal basis for the objection.

If parties do not file objections, they risk waiving the right to appeal questions of fact. And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

### II.   Background

Mr. Stricklin alleges that Defendants violated his constitutional rights while he was held in punitive isolation at the Cummins Unit of the Arkansas Department of Correction (ADC). (Docket entry #2) Specifically, he alleges that he had no access to television, news, educational services, personal property, air conditioning, or heating while serving his sentence for a disciplinary violation in punitive isolation. (#2) He also alleges that he was held in punitive isolation beyond the time that he was sentenced to

serve, from December 21, 2017 until March 23, 2018,[1] and again from June 18, 2018, until August 2, 2018.[2] (#2) In his deposition, Mr. Stricklin alleged that Defendants further violated his rights by failing to provide him with a 48-hour relief period after being housed in punitive isolation for 30 days.[3] (#28-1, p.7)

Defendants have moved for summary judgment, arguing that Mr. Stricklin has failed to state a constitutional claim; asserting sovereign and qualified immunity; and failure to exhaust administrative remedies regarding the 48-hour relief period. (#27) Mr. Stricklin has not responded, and the time for doing so has passed.

## III. Standard

Summary judgment means that the court rules in favor of a party without the need for a trial. A moving party is entitled to summary judgment if the evidence, viewed in the light most favorable to the party on the other side of the lawsuit, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322B23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

Pursuant to Local District Court Rule 56.1, all material facts set forth in the statement filed by the moving party are deemed admitted unless controverted by a

---

[1] Initially Mr. Stricklin pled that he was held in punitive isolation until April 23, 2017; however, in his deposition, he acknowledged that he had the date wrong and that he was released from punitive on March 23, 2018. (#28-1, p.5)
[2] Mr. Stricklin's equal-protection claims were previously dismissed. (#7)
[3] Mr. Stricklin had not raised that claim prior to his deposition.

2

statement of facts filed by the non-moving party. Because Mr. Stricklin failed to respond to the Defendants' motion for summary judgment, the Court deems the Defendants' version of the facts admitted.

## IV. Facts

Inmates sentenced to punitive isolation are not allowed access to newspapers, magazines, or personal property. (#28-2, p.2) Inmates serving 30 consecutive days in punitive isolation sentences receive a 48-hour period of relief at the end of 30 days, during which the restrictions are lifted. (#28-2, p.2)

On November 27, 2017, Mr. Stricklin was sentenced to punitive isolation and started serving his time after a disciplinary conviction.[4] (#28-1, p.2) He alleges that he should have been released to general population sometime in December of 2017. (#28-1, p.6) On December 22, 2017, he was assigned to the hoe squad, and his access to newspapers, magazines, and his personal property was restored. (#28-1, pp.4-5; #28-2, p.2) He remained in in punitive isolation, however, until March 23, 2018, due to overcrowding at the Cummins Unit. (#28-1, pp.4-5; #28-2, p.2)

It is undisputed that Mr. Stricklin did not receive a 48-hour relief period after December 22, 2017. (#28-2, p.2) It is also undisputed, however, that after December 22, 2017, he was no longer subjected to the restrictions normally imposed in isolation. (#28-2, pp.2-3)

---

[4] There is no allegation that Mr. Stricklin was improperly sentenced to punitive isolation.

3

On May 25, 2018, Mr. Stricklin was again admitted to punitive isolation to serve a sentence for a disciplinary conviction. (#28-2, p.3) On June 18, 2018, he was assigned to the hoe squad, and his access to newspapers, magazines, and his personal property was restored. (#28-2, p.3) He remained in punitive isolation until August 3, 2018, due to overcrowding at the Cummins Unit. (#28-2, p.3) It is undisputed that Mr. Stricklin did not receive a 48-hour relief period after June 18, 2018. (#28-2, p.3) It is also undisputed that, although Mr. Stricklin was held in punitive isolation after June 18, 2018, he was no longer subjected to the same restrictions as inmates sentenced to punitive isolation. (#28-2, p.3)

The punitive areas at the Cummins Unit do not have heat and air conditioning systems, but rather, merely a ventilation system. (#28-2, p.3) The ADC keeps and maintains daily temperature logs for all punitive isolation barracks. (#28-2, p.3) The average temperature in punitive isolation at the Cummins Unit in June through August of 2018 was approximately 70 degrees. (#28-2, p.3) From December to March of 2018, the average temperature was 70 to 71 degrees. (#28-2, p.3)

Mr. Stricklin did not file any grievances relating to his claim that he did not receive 48-hour relief from punitive isolation. (#28-3, p.2)

**IV.    Discussion**

    A.    Restricted Access

It is undisputed that Mr. Stricklin was not given access to television, news, educational services, or personal property while in punitive isolation from November 27,

4

2017, through December 22, 2017, and then again from May 25, 2018, through June 18, 2018. The restrictions while Mr. Stricklin was in punitive isolation for 25 consecutive days did not violate clearly established law, and the Defendants are entitled to qualified immunity.[5] See *Beard v. Banks*, 548 U.S. 521, 523 (2006) (holding policy of restricting access to newspapers, magazines, and photographs on inmates held in segregation for behavior problems did not violate the First Amendment); *Hosna v. Groove*, 80 F.3d 298, 304-05 (8th Cir. 1996) (it did not violate the constitution when inmates held in administrative segregation had restrictions on access to their personal property); *Spencer v. Snell*, 626 F. Supp. 1096 (E.D. Mo.), *aff'd*. 786 F.2d 1171 (8th Cir. 1986) (prisons are not constitutionally required to provide rehabilitative, educational, or vocational programs); and *Dunahue v. Watson*, 2017 WL 4931705 (E.D. Ark. 2017) (citations omitted) (there is no clearly established constitutional right to a television or radio).

    B.    Lack of Heating and Air Conditioning

The "Constitution does not mandate comfortable prisons" or that prisons be "free of discomfort." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Additionally, only "extreme deprivations" that deny "the minimal civilized measure of life's necessities are

---

[5] In determining whether the Defendants are entitled to qualified immunity, the Court asks whether the facts alleged, viewed in a light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and whether the constitutional right was "clearly established" at the time of the incident-- meaning whether a reasonable official would have known that his or her actions were unlawful. *Scott v. Benson*, 742 F.3d 335, 339 (8th Cir. 2014). If the answer to either question is "no," the Defendants are entitled to qualified immunity. Here, the answer to both questions is no.

5

sufficiently grave to form the basis" of an Eighth Amendment violation. *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). Thus, to prevail on an Eighth Amendment conditions-of-confinement claim, a prisoner must prove that, objectively speaking, the deprivation was sufficiently serious to deprive him of the minimal civilized measures of life's necessities or to constitute a substantial risk of serious harm to his health or safety. The prisoner must also prove, subjectively speaking, that the defendants were deliberately indifferent to the risk of harm posed by the deprivation. *See Davis v. Oregon County, Mo.*, 607 F.3d 543, 548-49 (8th Cir. 2010); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

Here, Mr. Stricklin alleges there was no heat or air conditioning in punitive isolation, but there was a ventilation system. The temperature logs demonstrate that the average temperature during the time he was in punitive isolation was 70 to 71 degrees. Mr. Stricklin has been unable to show that the ventilation system was insufficient and therefore subjected unconstitutional conditions of confinement.

C.   Punitive Isolation Beyond his Sentence

To the extent that Mr. Stricklin claims that his due process rights were violated because he was held in punitive isolation beyond the term of his sentence to isolation, this claim fails. A prisoner's procedural due process rights are triggered under the Fourteenth Amendment only if he has a liberty interest at stake. *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003)

6

Here, the evidence demonstrates that, after 25 days, in both December and June, Mr. Stricklin's restrictions were lifted, even though he remained in punitive isolation. His time in isolation beyond the term of his disciplinary sentence is not serious enough to implicate a liberty interest. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *PortleyBEl v. Brill*, 288 F.3d 1063, 1065B66 (8th Cir. 2002) (holding that inmates have no liberty interest in maintaining a particular classification level; and 30 days in punitive segregation is not an atypical and significant hardship under *Sandin,*); *Orr v. Larkins,* 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Kennedy v. Blankenship,* 100 F.3d 640, 642-43 & n.2 (8th Cir. 1996) (placement in punitive isolation was not atypical and significant hardship despite restrictions in mail, telephone, visitation, commissary, and property privileges).

D.   48-hour Relief

Finally, Mr. Stricklin alleges that his rights were violated when he did not receive a 48-hour relief period after he had been in punitive isolation for more than 30 days. This claim fails for several reasons. First, Mr. Stricklin did not plead this claim in his complaint. He testified in his deposition that he intended to amend his complaint to add this claim, but he never did so.

Second, the Defendants provide uncontroverted evidence that Mr. Stricklin failed to exhaust this claim before filing his complaint. And third, even if he had exhausted this claim, he was not entitled to a 48-hour relief period because, after he had been there for

25 days, his access to television, news, educational services, and personal property were restored.

    E.    Official Capacity Claims

A civil litigant cannot recover money damages from state actors sued in their official capacities. *Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). Accordingly, Mr. Stricklin's request for monetary relief in the Defendants' official capacity must be denied. As to his request for an injunction ordering Defendants to cease the practice of housing non-punitive inmates in punitive isolation beyond their sentence, Mr. Stricklin has been unable to prove his constitutional claims, and the request must be denied.

**V.**    **Conclusion**

The Court recommends that Defendants' motion for summary judgment (#27) be GRANTED and that Mr. Stricklin's claims regarding his assignment to punitive isolation be DISMISSED, with prejudice. His claims regarding his failure to receive a 48-hour relief period after serving 30 days in punitive isolation should be DISMISSED, without prejudice.

DATED, this 31st day of May, 2019.

_____
UNITED STATES MAGISTRATE JUDGE